Valles *v.* Peoples-Pittsburgh Trust
Company, Appellant.

Del Re *v.* Peoples-Pittsburgh Trust
Company, Appellant.

Argued March 27, 1940. Before SCHAFFER, C. J.,
MAXEY, DREW, LINN, STERN, BARNES and PATTERSON, JJ.

*J. Roy Dickie,* with him *H. A. Robinson,* of *Dickie, Robinson & McCamey,* for appellant.

*John E. Evans, Jr.,* with him *John E. Evans, Sr.,* of *Margiotti, Evans & Pugliese,* for appellees.

OPINION BY MR. JUSTICE LINN, May 13, 1940:

Defendant appeals from judgments on verdicts in two cases tried together; Valles claimed for personal injury and Grace Del Re for her husband's death. A number of errors are assigned, among them, striking out evidence elicited on cross-examination of a witness called by plaintiffs and the refusal of motions for judgments n. o. v.

In the basement of its bank and office building, appellant maintained mechanical equipment of various kinds needed in the operation of the building. A wall at one end of the basement was damaged by a flood and required reconstruction. It was from 25 to 30 feet long, about 12 feet high and was constructed of bricks with

white tiles over the bricks. The flood had caused the wall to bulge into the room. Constructed in front of and parallel with the wall and originally a short distance from it, was a coil or set of ten iron pipes 10 feet 2 inches long. They occupied a rectangular space 10 feet 2 inches by 3 feet 7 inches extending along the wall about 6 feet from the top. They were connected with other pipes and constituted the ammonia refrigeration machinery supplying cold water throughout the building; a tank containing liquid ammonia operated under pressure was installed on the floor below the pipes.

The bank employed an independent contractor named DeGiovanni to take down the wall and build a new one. His competence for the purpose is conceded. The appellant neither retained nor exercised any control over the work. DeGiovanni, called by the plaintiffs, testified that he[1] employed one, Impetra, to take down the wall; Impetra employed Valles and Del Re who, while so engaged, were injured.

The work was done at night, beginning August 3. They began at the top and during that night appear to have taken down the wall to a line behind the pipes. On the next night, August 4, while they were working, an explosion occurred and the place was flooded with ammonia gas, which, being inhaled, produced the injuries. It is not now contended that the explosion was

---

[1] In cross-examination he testified: "Q. Mr. DeGiovanni, you took this contract from the bank to do the whole job, furnish the labor and materials, both, didn't you, from the bank? A. I did that, after we made a contract. Q. You made a contract with Mr. Impetra to do the work? A. Yes, sir." He also testified: "Q. Now, did you look over the job before you made your proposition to the bank? A. Yes, sir; Mr. Impetra and I went down to look at the job. Q. And you saw these pipes that were located over in front of the wire [wall?], did you not? A. Yes, sir. Q. And after looking the whole situation over, you made your estimate of what it would cost the bank to have the work done, and you submitted that, and that was accepted by the bank? A. Yes, sir."

caused by any defect in or lack of repair of the pipes and equipment; there was no evidence to support such a contention. For present purposes, the pipes and machinery must be taken as appropriate.

The burden of proof was on the plaintiffs. It was necessary for them to show some breach of duty owing by defendant to them, and the breach of duty relied on in argument, as we understand it, is appellant's failure to give notice to the two workmen of the contents of the pipes and the dangers incident to breaking them. The pipes and equipment were not concealed; they were in open view. DeGiovanni, the contractor, called by the plaintiff, testified that he saw and considered them in making his bid for the work. Neither he nor any other witness testified that he was not informed of or did know what they contained; the plaintiffs had averred that he was not informed but they did not prove it, though proof of the fact was essential to recovery:[2] *Haller v. Penna. R. R.*, 306 Pa. 98, 109, 159 A. 10; see *Daley v. Iselin*, 212 Pa. 279, 285, 61 A. 919; *Carl v. Grand Union Co.*, 105 Pa. Superior Ct. 371, 375, 161 A. 429; Wigmore: Evidence, sec. 2486.

This alleged failure by defendant to give notice was not a fact peculiarly within defendant's knowledge and therefore was not within the class of facts to which the rule is applied that a plaintiff need not prove a negative but may require the defendant to prove the fact because of superior means of knowledge. Here, on the contrary, DeGiovanni was the independent contractor who had examined the *locus* for the purpose of informing himself of the work and the conditions under which it must be done. He knew, better than anyone else, whether he

---

[2] The learned trial judge was mistaken in his recollection when, at page 264a of his opinion refusing judgment, he said that DeGiovanni testified that he "knew and was told nothing of the nature of the equipment and the danger to them [the workmen] if any part of it was broken." DeGiovanni's printed evidence does not support the statement.

appreciated the risks involved or had been advised of them. The appellant could not have superior knowledge on that subject. Plaintiffs therefore failed in not putting in evidence to show that DeGiovanni was not informed of the contents of the pipes and of the dangers incident to breaking them. For that defect in plaintiffs' case, defendant's motions for judgment should be granted on the authority of cases to be referred to later. But it is unnecessary, on this record, to proceed solely on plaintiffs' failure to show that DeGiovanni was not informed. Plaintiffs called a witness named Saterial, who was superintendent of appellant's building. During his cross-examination, the following occurred: "Q. Mr. Saterial, before you let this contract to Mr. DeGiovanni, did you show him the place where the work was to be done? A. Yes, sir. Q. And were the pipes shown in this picture there evident? A. Yes, sir. Q. Did you tell him what those pipes contained? A. Yes, sir. Mr. Evans: I object to that and ask that the answer be stricken from the record and the jury instructed to disregard it. It is immaterial. The Court: Objection sustained and the answer is stricken out and the jury will pay no attention to it. As I understand the averments here, it is alleged that this machinery and so forth was in a dangerous condition. Mr. Dickie: No, that the thing itself was dangerous and that there was no notice given of it. The Court: To the plaintiff."

Later in the cross-examination, the following appears: "Q. Mr. Saterial, when you were preparing to let this contract to Mr. DeGiovanni, you said you did take him down and show him the place where the work was to be done? A. Yes. Q. And the pipes were there in evidence at the time? A. Yes, sir. Q. Did you tell him what those pipes contained? Mr. Evans: I object to this for the reasons given before, it is not relevant or material, and for the further reason it is not cross-examination. It is part of the defendant's case. If they seek to show notice, it should be put in at that time. The

Court: Objection overruled and an exception noted. Mr. Dickie: Q. What did you tell him was contained in these pipes? A. I told him it was a very dangerous place to work and the pipes contained ammonia. I said if anything broke it's liable to kill somebody and chase everybody out of the building from the fumes. Q. That was before the contract was executed? A. Before the contract was let . . ."

Subsequently, against the objection of defendant, this cross-examination was stricken from the record. The ruling is assigned for error. The evidence should have been allowed to remain. The cross-examination was not improper within the rule that the cross-examiner may not go outside the examination in chief and, under the guise of cross-examination, introduce his defense. The plaintiffs had alleged, as a proper part of their case, the failure to warn the contractor; it was an averment of breach of duty owing by appellant to the contractor and a fact to be established by the plaintiffs. The transaction which resulted in the contract between appellant and the contractor was conducted by the witness. The examination in chief showed and was designed to show, what that transaction was, and necessarily, the whole transaction, not merely part of it. The witness had stated in reply to questions in chief, that he was "in full charge of the building"; he had described the pipes and equipment and their operation; had detailed the working of the ammonia refrigerating system, and had stated that he, acting for the appellant, "arranged with Mr. DeGiovanni to take the old wall down and install a new wall"; he had described the conditions surrounding the place both before and after the accident. It was therefore competent in cross-examination to elicit from the witness any further elements in the transaction, resulting in the contract, which had not been brought out by the examination in chief. Plaintiffs had made the whole transaction a part of the inquiry. One element in the transaction was that elicited by the first

question, whether he had shown Mr. DeGiovanni the place where the work was to be done and the pipes; another element was whether he had told him what the pipes contained, and informed him of the danger incident to the work. For applications of the rule see *Felski v. Zeidman,* 281 Pa. 419, 422, 126 A. 794; *Smith v. Traction Co.,* 202 Pa. 54, 57-58, 51 A. 345; *Haun v. McCabe,* 308 Pa. 431, 438, 162 A. 906; *Conley v. Mervis,* 324 Pa. 577, 580 et seq., 188 A. 350. No witness called by the plaintiffs testified that DeGiovanni was not fully informed.

Justice requires that we review the record on the footing that DeGiovanni, in his examination of the *locus,* preparatory to submitting his bid, was informed of the conditions and risks incident to the performance of the contract. The position taken on behalf of appellees is thus stated in their brief: ". . . they [appellees] do not suggest that there was any negligent act of any independent contractor; That Appellees do not claim Appellant to be liable for personal injuries sustained by Del Re and Valles because the Appellant entrusted to an independent contractor, an inherently dangerous article; That the Appellant was negligent in its selection of an independent contractor. The theory upon which Appellees *have claimed* in their pleadings and testimony that the Appellant Bank is liable to them for personal injuries sustained by Valles and death by Del Re is that these two men were business visitors upon the premises of the bank and were owed a duty of reasonable care, the exercise of which the Bank, through its employees, failed to give . . ."

As plaintiffs do not found responsibility on defendant's delegation of the work to an independent contractor or on any breach of duty to him, we shall merely note several distinctions, settled in this state, concerning the standard of an owner's responsibility to persons coming on his premises. His responsibility to an independent contractor's employes while performing the

contract on his premises is not the same as his responsibility to his own employes. The subject was recently considered in an opinion by SIMPSON, J., from which the following is pertinent: "An owner of a building owes no statutory duty to the employee of a contractor, in order to guard against injury to the employee, to instruct him as to the dangers of the employment, or to give him a reasonably safe place in which to work. While the owner in such a case is required to use reasonable care to guard the employees against injury, he will not be liable where causes of the injury intervened which he neither did nor could expect: *Rugart v. Keebler-Weyl Baking Co.*, 277 Pa. 408. 'An owner of a building is not liable for injuries to a servant or to a person lawfully upon his premises by reason of latent defects of which he was ignorant and which could not have been discovered by the exercise of reasonable care and diligence': *Lentz v. Allentown Bobbin Works*, 291 Pa. 526. 'An occupier of premises owes to business invitees the affirmative duty of [exercising reasonable care in] keeping his premises reasonably safe, and of giving warning of any failure to maintain them in that condition': *Kulka v. Nemirovsky*, 314 Pa. 134." *Nettis v. Gen. Tire Co. of Phila., Inc.*, 317 Pa. 204, 210, 177 A. 39.

Valles and Del Re worked behind and about the pipes during the night of August 3 and the night of August 4 until the injuries occurred. Valles's evidence of the injury (there is no other) is to the effect that Del Re stood on a scaffold loosening bricks with a bar which he, Valles, would catch and throw to the floor. While so engaged, a pipe 2 or 3 inches long, extending at right angles from one of the pipes along the wall, broke off and discharged ammonia gas, which, being inhaled, injured the men. Plaintiffs contend that the pipe was broken by a brick from the wall, a contention which, for present purposes, may be accepted. It was part of the duty of the men to avoid damaging the pipes, for, unless they damaged them, the contents could not in-

jure them. Valles's evidence that he had not been informed of the risk is, as against appellant, immaterial on this record; he was not employed by the bank but by the contractor, DeGiovanni, who was fully informed, and whose duty it was to instruct the workmen he sent or caused to be sent there to work. The decisions in this state require us to hold that if there was a breach of duty to the workmen it was DeGiovanni's and not appellant's. Without some wrongful act or omission by appellant, liability to the contractor's workmen would not result. Defendant performed its duty when it gave notice to DeGiovanni; it would be unreasonable to require warning to every sub-contractor and laborer who entered the premises, on the theory that it was appellant's duty to foresee that the contractor would not perform his duty and so permit the work to be done improperly.

Appellees rely on *Kulka v. Nemirovsky*, 314 Pa. 134, 170 A. 261. That case illustrates the application of the rule against their contention. The owner is relieved of responsibility to an independent contractor and his servants if, in the words of the rule, "the defects responsible for the injury were known to the contractor." In Kulka's case, there was no independent contractor performing a contract for the defendant; Kulka was engaged in removing a machine bought by his employers, but without warning of the inadequate setting of the machine which fell on him. The owner's responsibility was direct to Kulka; it was not insulated by the intervention of a relationship like that of DeGiovanni in this case.

In *Nettis v. General Tire Co. of Phila., Inc.*, 317 Pa. 204, 177 A. 39, in which an employe of a window cleaning company was injured by the pulling out of a window sash, it was held that the event was one not reasonably foreseeable. In *Rugart v. Keebler-Weyl Baking Co.*, 277 Pa. 408, 121 A. 198, a minor plaintiff, under 16 years of age, employed by a contractor installing electric con-

nections in defendant's establishment, was held not to be within the provisions of the Act of May 2, 1905, P. L. 352, concerning the employment of minors. In that case, while the boy, employed in violation of the Act, was waiting to receive wires about to be passed to him through a conduit, one of defendant's employes threw something at him which struck a sprinkler pipe near which he stood, and caused the water to escape from it; the precipitation of water, as the court said, "blinded and confused him. In this dazed condition his arm and body became involved with the shaft, causing serious injury to him." That result, too, was one not reasonably foreseeable. Other cases on the subject are referred to in the opinion in the Nettis case; see also *Silveus v. Grossman*, 307 Pa. 272, 161 A. 362.

If the independent contractor was not informed of the possible danger, plaintiffs had the burden of proving their averment to that effect as an element in the breach of a duty owing by appellant which they made the basis of their right to recover. The record, if considered without the evidence elicited by the cross-examination which was stricken out, left plaintiffs' case lacking in an essential element, not otherwise supplied in the record, and therefore insufficient to support the verdicts and judgments. But, instead of relying merely on plaintiffs' failure to prove that appellant had omitted to do something, which omission was alleged to be the basis of plaintiffs' right, we must consider the evidence brought out by the cross-examination of plaintiffs' witness which appears in the record, though erroneously withdrawn from consideration, which positively established that there was no omission such as plaintiffs had averred and on which they relied as furnishing the right to recover: compare *Conley v. Mervis*, 324 Pa. 577, 588, 188 A. 350.

The judgments are reversed and in each case judgment is entered for the defendant.