## Engle, Appellant, v. Reider.

412

Argued September 27, 1949; reargued October 10, 1950. Before DREW, C. J., STERN, STEARNE, JONES, LADNER and CHIDSEY, JJ.

*Leonard L. Ewing,* with him *Reed, Ewing & Ray,* for appellant.

*Myron E. Rowley,* with him *Ralph E. Smith, Milton Selkovits* and *Rowley & Smith,* for appellees.

OPINION BY MR. JUSTICE HORACE STERN, January 5, 1951:

Notwithstanding the tragic death in this case of plaintiff's decedent, the jury, in an action brought by the administratrix of his estate under the Wrongful Death and Survival Acts, found a verdict in favor of the original defendants, and we are constrained to hold, on plaintiff's present appeal, that the court below acted properly in refusing her motion for a new trial.

The jury found a verdict in favor of the plaintiff against the additional defendant, who, however, was decedent's employer and therefore liable to him only under the Workmen's Compensation Act; accordingly the court below entered judgment for this defendant n.o.v., and from that judgment no appeal has been taken.

The controlling facts are, briefly, as follows: Edward J. Reider and Minnie M. Reider, the original defendants, were the owners of a two-story commercial property in Rochester, Beaver County. In 1946 they had a hot-water heater installed on the second floor for the purpose of supplying hot water to the tenants. Its fuel was natural gas; it was enclosed in a small closet and, although it was provided with an opening for that purpose, it was not fitted with a vent to carry off the fumes produced by the heater when burning and which were released instead, by means of a hole cut through the ceiling of the closet, into a loft space between the ceiling of the second floor and the roof of the building. This space, 60 feet in length and 18 feet in width, was but 28 inches high at its highest point; it was a dark area without any opening to provide an exit for the gas fumes ascending from the heater below, and it thus constituted what amounted practically to a reservoir for the accumulation of the carbon monoxide gases, which are colorless, tasteless, almost odorless, and deadly upon extended inhalation. At the time the heater was installed defendants were advised by the contractor who did the work that a fresh air vent

ought to be attached to it and the contractor recommended to them a tinner for that purpose, but they made no attempt to have such a vent constructed. At different times thereafter their attention was called to the danger of the condition thus created and they were urged to have it corrected, but nothing was done.

In 1947 defendants entered into a contract with Hershel Routman, the additional defendant, for the installation by the latter of a furnace on the second floor of the property adjacent to the hot-water heater. This furnace was to be electrically controlled, and for that purpose Routman decided that the necessary connection could best be made with a wire which ran across the space above the furnace and which could be reached by going into that space through the hole above the heater in the closet. Two of Routman's employees, Joseph C. Smith and the decedent, Raymond H. Engle, worked on the job for a few days; on the day of the accident Smith left there for about an hour to return to the shop, and during his absence Engle, in order to reach the point where the splice or connection to the wire was to be made, crawled through the hole in the closet and wormed his way for a distance of some seven feet into the compressed space of the loft. When Smith returned he found Engle lying dead on the floor of the loft as a result of his having inhaled the carbon monoxide gas produced by the hot-water heater.

At the trial Routman testified that he had visited the Reider property several times before and during the installation of the furnace, had examined the premises, looked into the closet, seen the hot-water heater there and noticed there was no vent on the tank, and that he was fully aware of the resulting danger of carbon monoxide poisoning; he also testified that, according to his best recollection, he had discussed the matter with Reider on the first day on which the furnace was being installed and had called his attention to the

fact that the heater was not properly vented and that it was dangerous. Realizing, as he did, the hazard of working over the top of the heater, he instructed Smith to be sure to turn the gas off before going up into the loft. Smith, in turn, testified that he said to Engle that the heater should have been vented and was dangerous; also, that when he left to go to the shop he told Engle to be sure to turn the gas off before he entered the loft, to which Engle replied "O.K.". Engle did not turn off the gas; the pilot light was on and the gas was burning when Smith returned and discovered Engle's body.

The learned trial judge charged the jury that, while he would leave it to them to decide, it seemed to be undisputed that the contractor, Routman, well knew that there was a dangerous situation there caused by the failure to have a vent pipe that would carry the carbon monoxide fumes into the open air, and had warned his employee Smith accordingly. The jury was then instructed that "The extent of the duty of the owner of a building who employs an independent contractor to the latter's employees (that is, Routman's employee, Engle) with respect to known or discoverable dangerous conditions existing on the premises where the work is to be done, is to warn the contractor of their existence; he is not required to warn every sub-contractor and laborer who comes on the premises. In this case, . . . the Reiders had no obligation to warn Engle, an employee of Routman. His full duty was performed with regard to this dangerous condition when he warned the contractor Routman. If you find that he did warn the contractor Routman; or, if you find that Routman did not need to be warned because of his superior knowledge of the danger of unvented flues, or because of his having visited the premises five or six times he saw, or ought to have seen this obvious danger and realize it—and he says he did—then Reid-

er's full duty to those business visitors, Routman and Engle, was to notify Routman, or be sure that Routman knew of the existence of this condition which was dangerous; and if he had done that he did not need to go farther, he did not need to go as far as to notify Engle." The court further charged the jury that "the burden is affirmatively on the plaintiff (Mrs. Engle in this case) to prove the employer's [owner's?] (Reider's) failure to notify the contractor of the existing dangerous condition. There was no attempt made to show that. As a matter of fact, on cross-examination of Routman it was developed that Routman did know of the existence of this dangerous situation, and that he did nothing about it, except, as he says, that he warned Smith not to, under any circumstances, go up into that cubbyhole in the roof without first turning off the gas for a sufficient length of time to have the carbon monoxide dissipated. He doesn't say that he notified Engle; that wasn't developed. The burden is upon the plaintiff to show affirmatively that the Reiders did not notify the contractor."

These instructions were in complete accord with the law of Pennsylvania on the subject thus discussed. In *Newingham v. J. C. Blair Co.*, 232 Pa. 511, 520, 521, 81 A. 556, 560, the following quotation from White's Supplement to Thompson on Negligence, sec. 979: "It is the rule that the owner of property owes to an independent contractor *and his servants at work thereon,* the duty of exercising reasonable care to have the premises in a safe condition for the work, *unless the defects responsible for the injury were known to the contractor. . . ."* was commented upon as enunciating a "sound, general rule." Authority to the same effect is to be found in *Nettis v. General Tire Co. of Philadelphia, Inc.*, 317 Pa. 204, 209, 210, 177 A. 39, 41, 42. There then followed the decision of this Court in *Valles v. Peoples-Pittsburgh Trust Co.*, 339 Pa. 33, 13 A. 2d

19, where the subject of the liability of a property owner to the employees of a contractor called to work upon the premises to warn such employees against latent dangers was comprehensively discussed in an opinion by Mr. Justice LINN and it was held that the extent of the duty of the owner of a building under such circumstances was to warn the contractor of the existence of dangerous conditions, but that he was not required to warn every sub-contractor and laborer who came on the premises,—that his responsibility to an independent contractor's employees while performing the contract on his premises was not the same as his responsibility to his own employees; furthermore, that it was a necessary and essential part of the plaintiff's case to prove that the property-owner failed to notify or warn the contractor and that the latter did not have knowledge thereof. In the present case plaintiff made no attempt to prove that the contractor was uninformed as to the danger; on the contrary, the contractor himself testified that he was fully aware of it and had discussed it with defendants themselves. If, as the court instructed the jury, they believed Routman's testimony to that effect, their verdict in favor of defendants necessarily followed from the law laid down in the *Valles* case.

There is another, equally potent reason why plaintiff's right to recovery is barred in this case. The learned trial judge submitted several special interrogatories to the jury, one of which was as follows: "Was Raymond H. Engle negligent in crawling up over the tank into the space between the ceiling and roof without shutting off the gas and waiting a reasonable length of time for the fumes to clear away, and without having someone near at hand to help him in the event that any trouble developed?" To this interrogatory the jury answered: "Yes (Partially)." "Partially" must be understood as meaning "to some extent", but, of course contributory negligence even in the slightest degree

destroys the right of recovery. There was ample justification in the testimony for the jury's finding. As already stated, the witness Smith testified that he had warned Engle to turn the gas off before entering the loft and that they had discussed the dangerous condition arising from the fact that the heater was not vented. It is true that Smith admitted that he had not previously told anyone of such warning and discussion but the jury had the right to believe the testimony he gave at the trial and from it, and from all the other circumstances in the case, to conclude that Engle had been "partially" negligent in entering and crawling back into the loft although he was aware of the danger involved. While the jury's verdict in favor of plaintiff against the additional defendant was inconsistent with their special finding of contributory negligence, and even if, in such case, the special finding be not held as absolutely controlling (although plaintiff's counsel frankly concedes the contrary), certainly the court was not bound, in the exercise of its discretionary power, to grant a new trial, on that account, as to the original defendants. Plaintiff urges, however, that the Reiders should not be permitted to avail themselves of the defense of contributory negligence because their negligence amounted to reckless or wanton misconduct (*Kasanovich, Administratrix, v. George,* 348 Pa. 199, 34 A. 2d 523; *Misorski v. Pennsylvania R.R. Co.,* 348 Pa. 204, 34 A. 2d 526). This contention, not made at any stage of the trial, is raised for the first time in this Court, but, apart from that fact, and even though defendant's negligence may have been gross, it cannot properly be characterized as wanton. The distinction between gross negligence and wanton misconduct was explained in the *Kasanovich* case (p. 203, A p. 525) as being a difference not merely in degree but in kind; the cases in which wanton misconduct was found to exist were those in which the tortfeasor had actual knowl-

edge of a victim's peril but nevertheless pursued his tortious course with utter indifference to the outcome; (see *Slother v. Jaffe*, 356 Pa. 238, 242, 243, 51 A. 2d 747, 749, 750.) Allowing the gases to accumulate in the loft did not in itself constitute wanton misconduct; only if Reider was responsible for Engle's entering there without being warned of the danger could he possibly have been so charged. In view of Routman's testimony that he had called Reider's attention to the fact that the heater was not properly vented and was therefore dangerous Reider was justified in assuming that Routman, aware of the danger, would warn his employees accordingly. "A possessor of land is subject to liability for bodily harm caused to business visitors by a natural or artificial condition thereon if, but only if, he (a) knows, or by the exercise of reasonable care could discover, the condition which, if known to him, he should realize as involving an unreasonable risk to them, *and* (b) *has no reason to believe that they will discover the condition or realize the risk involved therein, . . .*" Restatement, Torts, §343. The jury were asked in a special interrogatory: "Did Edward J. Reider and Minnie M. Reider have any reason to believe that Hershel Routman, or his agents, would discover the condition of the unvented hot-water heater or realize the risk involved therein?" Their answer was "Yes." On the whole, therefore, the jury could not have found on the testimony in this case that, however great the negligence of which the Reiders were guilty, it constituted wanton misconduct within the legal concept of that term.

It appearing from all angles, therefore, that the verdict of the jury in favor of the original defendants was fully justified by the evidence, the court properly denied the motion for a new trial. As far as the verdict against the additional defendant, Routman, was concerned, the court entered judgment n.o.v. thereon be-

cause, he being Engle's employer, and it having been stipulated at the trial that he had entered into an agreement for workmen's compensation for Engle's death which agreement remained in force and was being complied with, the verdict against him in favor of plaintiff could not, of course, be sustained.

Judgment affirmed.

---

DISSENTING OPINION BY MR. JUSTICE JONES:

The majority opinion unfortunately extends the rule of *Valles v. Peoples-Pittsburgh Trust Company,* 339 Pa. 33, 13 A. 2d 19, to a set of circumstances to which it is neither reasonably nor logically applicable. The two cases are plainly distinguishable on their facts.

In the *Valles* case, the instrumentality which the plaintiffs alleged was negligent consisted of refrigeration coils and pipes containing ammonia, along a basement wall in the defendant's building; the installation was essential to the service and proper at the place of its location; the presence of the pipes and coils was readily observable; and the ammonia content, which, if released to the air, would likely prove dangerous, was securely contained within the confining coils and pipes. It was only because a stub of a pipe extending out from one of the pipes along the wall was broken off during the loosening and removal of bricks from the wall by a workman of an independent contractor that the ammonia was released and caused the injury of one of the workmen and the death of another. The duty of reasonable care owed by the property owner to the employees of the independent contractor (*Nettis v. General Tire Company of Philadelphia, Inc.,* 317 Pa. 204, 209, 177 A. 39) was fully met in the *Valles* case, as a matter of law, when the property owner gave to the workmen's employer notice of the potential danger from interference with the coils and pipes. In short, the own-

er of the premises had done all that could reasonably be expected of him to safeguard the workmen against injury from the confined ammonia.

In the instant case, the *lack of a vent* for the gas water heater in a closet of a room on the second floor of Reider's commercial building, to which business visitors were invited, was *neither a proper nor an essential type of installation;* in its operation, the *unvented* heater was bound to give off deadly carbon monoxide gas which carries no warning to the senses of its presence; Reider had had specific warning from a well-qualified person of his own choosing a year before the accident that, unless he vented the heater, he was "going to kill everybody in the building"; and he had said then that he would have the highly dangerous condition corrected, which he never did. That he was fully cognizant of the imminent peril which he thus continued to maintain is further confirmed by his own averments in his complaint against Engle's employer, one Routman, whom he brought upon the record as an additional defendant. There he averred that ". . . the fumes produced by the heater were not let away by any vent, but were allowed to escape through a hole in the ceiling of the closet into the area between the ceiling of the second floor and the roof of the said building. . . . Hot water heaters, such as the one installed by the defendant [himself,] . . . produce in their operation in varying quantities, an odorless, colorless, and tasteless gas known as carbon monoxide. This gas is harmful to human beings and if inhaled in sufficient quantities, will produce death." Reider's effort was not in denial of his own willful negligence but to implicate Routman who, he averred, acting by a representative, had directed his employee Engle "to climb up through the closet, over the hot water tank, into the area between the ceiling and the roof, and there make an electrical connection to a service wire in that area"; and that, in the

performance of that duty Engle had been overcome and died, his death being "caused by carbon monoxide which had been produced by the hot water heater in the closet." These quotations are Reider's own averments. Yet, he knowingly persisted in maintaining in his building a veritable lethal chamber which caused exactly what he must have known it was certain at some time to cause, namely, the death of a human being.

The reason why the jury gave a verdict for Reider is not hard to discover. The trial judge, on the ascribed, but nonetheless misunderstood authority of the *Valles* case, peremptorily instructed the jury that, if Reider gave Routman, Engle's employer, advance warning of the danger of the *unvented* heater or that, even if Reider did not so warn Routman, the latter *otherwise* knew of the danger, then the jury should find a verdict for Reider. That instruction was an end of the case so far as Reider was concerned; it was tantamount to a directed verdict in the circumstances; Routman had freely admitted that he knew the "unvented heater" was dangerous. The instruction gave Reider far more than he was entitled to under the evidence which warranted a jury's finding that his actions in the premises constituted *reckless and wanton negligence,* nothing less. And, just as contributory negligence is no defense to an action for another's *reckless* and *wanton* misconduct (see *Kasanovich v. George,* 348 Pa. 199, 202-204, 34 A. 2d 523; *Misorski v. Pennsylvania Railroad Company,* 348 Pa. 204, 206, 34 A. 2d 526; and Restatement, Torts, §482), by like token, one does not exculpate himself from liability for his *reckless and wanton negligence* by warning another of it. If Reider's direct warning of his patently culpable wrongdoing would have been incapable of barring Engle as a matter of law, by what logic could a vicarious warning bar the deceased's personal representative? Whether Engle himself was reckless was at most a question of fact for

the jury; any finding to such effect could be rested on no more than the testimony of a self-impeached witness whom the jury presumably did not believe, as will hereinafter appear. Nothing less, therefore, than a new trial can adequately eradicate the basic and fundamental error of the trial court's charge.

In addition to the foregoing, the learned trial judge submitted to the jury one leading and some partisanly diverting interrogatories for special findings. In objecting to the submission of these special questions, plaintiff's counsel aptly commented that they were ". . . more calculated to confuse than to define." The interrogatory, first above referred to, assumed facts on the basis whereof the jury was compelled to answer that Engle had been negligent; but, even on such a fallaciously posed assumption, the most the jury was willing to answer was "Yes (partially)." In view of the fact that the evidence warranted a finding that Reider's conduct amounted to *reckless and wanton negligence,* contributory negligence on Engle's part was, of course, not an available defense to Reider (*Kasanovich v. George,* supra). Furthermore, Engle was dead and his representative, as plaintiff, was entitled, in the attending circumstances, to a presumption that he had exercised due care for his own safety. The jury could not have meant any more by its answer to the leading interrogatory than that Engle was negligent *on the basis of the facts which the interrogatory assumed.* Yet, there is not the slightest indication in the record that the jury found the facts so to be. On the contrary, if the jury had meant to indicate that they had found Engle guilty of negligence, how then did they come to find, by their general verdict, in favor of the plaintiff and against the additional defendant (Routman) in a substantial amount? Nor can it be of any present significance that Routman, the additional defendant, was later eliminated from the case by a judg-

ment n.o.v. As Engle's employer, he was liable for workmen's compensation and, automatically, was relieved of his common law liability for negligence, but that does not affect the inconsistency of the jury's verdict as to the Reiders which was no doubt due to what the trial judge erroneously instructed with respect to the ruling in the *Valles* case.

A careful study of the record in this case impels me to conclude that only by a new trial can the issues be fairly and justly tried and determined. I would, therefore, reverse with a v.f.d.n.