373 F.2d 886
 David B. BEEBE, Administrator of the Estate of Richard C. Kline, Deceased
v.
HIGHLAND TANK AND MANUFACTURING COMPANY.
NATIONAL MOLASSES COMPANY, Appellant, and
P. W. Moyer, Individually and as the Surviving Partner of F. M. & P. W. Moyer
v.
EASTERN STATES FARMERS EXCHANGE.
 No. 16097.
 United States Court of Appeals Third Circuit.
 Argued December 21, 1966.
 Decided February 24, 1967.
 Rehearing Denied March 27, 1967.
 
 Joseph J. Murphy, Murphy, Senesky & Veldorale, Philadelphia, Pa. (Vincent C. Veldorale, Philadelphia, Pa., on the brief), for appellant.
 Gordon W. Gerber, Dechert, Price & Rhoads, Philadelphia, Pa. (Galen J. White, Jr., Philadelphia, Pa., William D. Hutchinson, James D. Williamson, Hicks, Williamson, Friedberg, Jones & McKenna, Pottsville, Pa., on the brief), for plaintiff-appellee.
 Joseph G. Manta, LaBrum & Doak, Philadelphia, Pa. (William B. Freilich, James M. Marsh, Philadelphia, Pa., on the brief), for appellee Highland Tank & Mfg. Co.
 Peter P. Liebert, III, Liebert, Harvey, Bechtle, Herting & Short, Philadelphia, Pa., for appellee P. W. Moyer, individually and as surviving partner of F. M. and P. W. Moyer.
 Before BIGGS, HASTIE and SEITZ, Circuit Judges.
 OPINION OF THE COURT
 HASTIE, Circuit Judge.
 
 
 1
 National Molasses Co., one of the defendants in a diversity action under the Pennsylvania Wrongful Death and Survival Acts, is here appealing from a $300,000 judgment.
 
 
 2
 The decedent, Richard Kline, was an employee of third-party defendant Eastern States Farmers Exchange, a cooperative which sold various commodities, including black strap molasses, to farmers for agricultural use. For a number of years Eastern had bought its stock of molasses from National, a large importer and nationwide wholesale distributor of black strap molasses. To store molasses thus purchased from National for resale, Eastern had constructed the tank involved in this case under the floor of one of its buildings. The evidence showed that Kline was killed by the inhalation of carbon dioxide when he entered the almost empty tank in an effort to rescue a fellow employee who had been overcome while moving about the floor of the tank in activity preliminary to cleaning it.
 
 
 3
 The original complaint was filed against National and two other concerns which had been involved in the construction or installation of the tank. The decedent's employer Eastern was brought into the action by National as a third-party defendant.
 
 
 4
 The case was tried to a jury. At the conclusion of the plaintiff's case the court denied National's motion for a directed verdict. However, it granted similar motions by the two defendants involved in the construction and installation of the tanks and they are not parties to this appeal.
 
 
 5
 The trial resulted in a jury verdict against National in the amount of $306,975 under the Wrongful Death Act and $72,000 under the Survival Act. The jury also found that National was entitled to contribution from Eastern. National then moved for judgment notwithstanding the verdict in the principal action and for a new trial. The court denied these motions, but with the proviso that the plaintiff should remit the amount by which the total recovery exceeded $300,750. Such a remittitur was filed and final judgment was entered accordingly. This appeal followed.
 
 
 6
 The denial of judgment n. o. v. is our first concern. After verdict, the appellant moved for judgment in accordance with its earlier motion for a directed verdict. The trial court denied this relief on the ground that the appellant had failed to comply with the requirements of Rule 50, Federal Rules of Civil Procedure. The court added that in its view the motion must also fail on its merits.
 
 
 7
 We agree that the appellant's failure to comply with Rule 50 precluded the granting of judgment in its favor notwithstanding the verdict against it. The record shows that at the close of all the evidence the appellant failed to renew motions it had made at earlier stages of the litigation for a directed verdict. And judicial power exists under Rule 50(b) to grant judgment notwithstanding the verdict only when a motion for a directed verdict has been made at the conclusion of all the evidence and, in legal contemplation, the questions thus raised have been reserved for subsequent determination. We have repeatedly held, very recently in Gebhardt v. Wilson Freight Forwarding Co., 3 Cir., 1965, 348 F.2d 129, 132 "that the introduction of evidence after the denial of a motion for a directed verdict constitutes a waiver of the error, if any, in the denial unless the motion is renewed at the close of all of the evidence". We adhere to that ruling.
 
 
 8
 We come now to various alleged trial errors, upon which National has based its motion for a new trial.
 
 
 9
 The plaintiff undertook to prove that the appellant, a corporation long engaged in the business of importing, storing and selling millions of gallons of molasses annually, was chargeable with knowledge that molasses in a storage tank ferments and creates carbon dioxide, a heavy suffocating gas which often accumulates in high concentration in the lower part of the air space above the molasses. Moreover, carbon dioxide is odorless and colorless and thus may present an unsuspected hazard to a person entering a molasses storage tank to clean or repair it, or for any other purpose. On the other hand, decedent's employer, Eastern, was a cooperative which handled and sold to farmers a great variety of products suitable for agricultural needs. There was evidence that neither Eastern nor its employees did in fact appreciate the risk of a deadly accumulation of carbon dioxide in its molasses storage tank and that National should have realized the likelihood that this would be the case and should have warned Eastern of the danger. National gave no such warning. At the same time it was contended that Eastern, though ignorant of dangers inherent in molasses storage, was negligent in failing to acquaint itself with those dangers, in adopting improper procedures in cleaning its tanks and in failing to provide emergency safeguards.
 
 
 10
 The jury found both National and Eastern negligent since in addition to imposing liability on National, it returned a verdict for National against Eastern on the third-party claim for contribution.[1] However, National contends that the jury should have been instructed that National, even though negligent in not warning Eastern, would not be liable if Eastern was also negligent in not learning of the danger and in not properly safeguarding operations in and about the tank. In other words, National sought an instruction that if negligence by Eastern was a responsible cause of the accident, that negligence constituted a superseding cause and relieved National of liability.
 
 
 11
 It is true that, if Eastern had appreciated the nature and extent of the danger any warning by National would have been superfluous, and National's failure to warn would not even have been a causa sine qua non. Cf. Green v. Independent Oil Co., 1964, 414 Pa. 477, 201 A.2d 207; Kline v. Moyer, 1937, 325 Pa. 357, 191 A. 43, 111 A.L.R. 406. But there is no evidence here that Eastern had such actual knowledge. Thus, National's failure to give its regular customer Eastern the benefit of its superior knowledge could constitute one of the legally responsible causes of the present accident, even though Eastern's failure to discover the danger on its own initiative and provide safeguards may also have been such negligence as would provide a proper basis for imposing on Eastern an obligation of contribution that was enforceable in National's third-party proceeding against it. Cf. Duck-worth v. Ford Motor Co., 3d Cir., 1963, 320 F.2d 130. We find no error in the court's handling of this aspect of the case.
 
 
 12
 Several additional contentions have been advanced concerning the proof and the amount of damages. The jury returned a verdict against National in the amount of $306,975 on the Wrongful Death claim and $72,200 on the Survival claim, an aggregate award of $379,175. On motion for a new trial, the court found this verdict excessive and ordered a new trial unless the plaintiff should file "a remittitur of the amounts in excess of $300,750 * * * [to] be apportioned to the Wrongful Death and Survival actions in the same proportions as the amounts awarded by the jury's verdict bear to the whole". Such a remittitur was filed and the awards now stand reduced accordingly.
 
 
 13
 The appellant's principal point in this connection seems to be that the prospective future earnings of the deceased were improperly conjectural because neither actuarial testimony nor any table of life expectancy was introduced in evidence. However, there was evidence that the decedent's grandfathers died at the ages of 75 and 72, and his grandmothers at 72 and 68. There also was evidence of the decedent's sound health and clean and wholesome living until the mishap in suit terminated his very promising life at age 21. There also was clear and informative evidence of his past and prospective earnings. This was sufficient for a jury determination of damages. Cf. Benson v. Altoona & L. V. E. Ry., 1910, 228 Pa. 290, 77 A. 492. After considering this evidence and the amount of the verdict the court directed remittitur as set out above. It was the court's view that the total sum awarded substantially exceeded the present value of the lifetime net earnings that could rationally be predicted for the decedent. We cannot say either that the evidence was insufficient to support the reduced award or that it required the court to permit the original verdict to stand. Cf. Russell v. Monongahela Ry., 3d Cir., 1958, 262 F.2d 349.
 
 
 14
 It is also urged on this appeal that the apportionment of the remittitur between the Wrongful Death claim and the Survival claim was arbitrary. However, it is admitted that the decedent died almost immediately and without pain or suffering. Almost all of both awards represented the jury's estimate of the present worth of probable lifetime net earnings after the subtraction of probable expenditures for personal maintenance, and the relative amounts awarded on Wrongful Death and Survival claims represented the jury's judgment of the decedent's likely allocation of that total between support for dependents and accumulations, if he had lived. The court concluded that some $80,000 of the total awards could not be justified by the evidence upon which an estimate of future net earnings had to be made. At the same time, the court respected the jury's allocation of anticipated overall net earnings between family support and accumulations by requiring that the $80,000 reduction of the total award based upon prospective future earnings be allocated between Wrongful Death and Survival awards in the same proportion as the original jury awards on these claims bore to each other. This was logical and proper and merits appellate sanction.
 
 
 15
 Finally, National has asked us to consider whether the trial court's action in dismissing the plaintiff's action as against two other parties involved in the construction and installation of the tank was correct. But the plaintiff, the claimant against those parties in the original action, has not appealed their dismissal. And, though the record shows that National at one time cross-claimed against these co-defendants, the record also shows that all cross-claims among the defendants were voluntarily dismissed. Since no claim against either of these co-defendants has been preserved for review, National has no standing now to challenge their dismissal.
 
 
 16
 The appellant also complains of other alleged errors in trial rulings. We have examined all of these contentions and find no reversible error.
 
 
 17
 The judgment will be affirmed.
 
 
 
 Notes:
 
 
 [1]
 The plaintiff did not sue Eastern, presumably because, under the workmen's compensation scheme, it would not be liable in a common law action for negligence causing its employee's death