## McGlinchey, Admx. v. Union Carbide Corporation

*Murray C. Goldman*, for plaintiff.

*Thomas E. Byrne*, for defendant.

ALEXANDER, J., December 16, 1970.—This action was instituted by the administratrix of the estate of Ronald J. Brittingham to recover damages from defendant, Union Carbide Corporation, by reason of the death of Mr. Brittingham on November 30, 1967. The matter was tried by the court, sitting without jury, from June 5 to June 11, 1970. We reserved decision, pending the submission of briefs by both parties. Due to illness, the transcription of the notes of testimony was delayed, and all briefs were not received until October 23, 1970.

The death occurred during a joint experiment conducted by defendant and Matlack, Inc., Brittingham's employer. The purpose of the experiment, which was conducted at Matlack's facility, was to determine the feasability of using nitgrogen as a pressurized propellant to unload a special liquid chemical (TDI) from Matlack's tank trucks. Matlack had been using compressed air for this purpose, and was seeking to alleviate problems caused by the moisture contained in the compressed air.

Defendant was the prospective seller of the nitrogen, and its employes were fully familiar with the product. As such, defendant is held to the standard of an expert: Guffie v. Erie Strayer Co., 350 F.2d 378 (3d Cir., 1965). Matlack, a common carrier specializing in the transportation of commodities in bulk, had no prior experience with the use of nitrogen for this purpose.

To conduct the experiment, Matlack arranged two of its tank trucks side by side. At the start, tank no. 1 was filled with water ( to simulate the TDI) and tank no. 2 was empty. A small tank of liquid nitrogen was then connected to tank no. 1. The pressure created by the release of nitrogen into tank no. 1 forced the water into tank no. 2.

Testimony was taken from most of the participants at the experiment: Gordon G. Hollingsworth, manager of engineering, and Thomas W. Patterson, sales representative, who were employes of defendant, as well as John O'Brien, vice president in charge of maintenance; Donald Huttlin, trailer equipment engineer, Seth Hendricks, shop foreman, and Paul Young, workman, who were employes of Matlack.

There is no dispute as to the facts which led to the death in this case. During the experiment, a valve on tank no. 1 malfunctioned, and a temporary adjust-

ment was made by Brittingham. When the experiment was over, Brittingham entered tank no. 1 through the 20-inch manhole on the top, presumably to make further repairs to the valve. Due to the fact that the tank was filled with pure nitrogen,[1] Brittingham was asphyxiated. No one from either company warned Brittingham that it was dangerous to enter the tank; nor did anyone of defendant's employes give any warning to any of Matlack's employes.

## LIABILITY

Plaintiff's theory of liability is a breach by defendant of its duty to warn Matlack and/or its employes of the dangers involved in the use of nitrogen. Counsel agree that the applicable Pennsylvania law was stated by the Court of Appeals for the Third Circuit in Pritchard v. Liggett & Myers Tobacco Co., 295 F.2d 292, 299 (1961):

". . . one who supplies a product to another and knows or should know that the foreseeable use is dangerous to human life unless certain precautions are taken, and who realizes or should realize that the user will not in the exercise of reasonable vigilance, recognize the danger, is under a duty to warn . . ."

Defendant relies on the latter portion of the above-quoted test which relieves the supplier of the duty to warn in situations where the user will, "in the exercise of reasonable vigilance recognize the danger." Defendant contends, alternatively, that its employes had no reason to believe anyone would, or could, enter the tank, and, as such, was under no duty to warn that the atmosphere inside the tank would not support life.

---

[1] Nitrogen is an odorless, colorless, tasteless gas and comprises approximately four-fifths of the air we breathe.

The basic questions, then, are whether the dangers which attended the use of nitrogen were, or should have been, apparent to Matlack, and whether defendant's employes knew, or should have known, that someone might enter the tank.[2] Each of these questions is a factual one, and thus we proceed to a more careful examination of the pertinent evidence.

## 1. *Matlack's Knowledge of the Dangerous Attributes of Nitrogen*

Two of Brittingham's superiors who were present at the experiment, O'Brien and Huttlin, testified that they knew an atmosphere of pure nitrogen would not support life and that, at the end of the experiment tank no. 1 contained pure nitrogen. However, each one also testified that, on the day in question, he "didn't think of it." Whether O'Brien and Huttlin (and, hence, Matlack) were thus guilty of a breach of a duty owed to Brittingham is not before us. But assuming there was such a breach, would this automatically relieve defendant of the duty to warn? We think not and, hence, must determine what evidence, if any, supports defendant's assertion that its employes could reasonably have assumed that Matlack appreciated the danger.

We find that this experiment was the first occasion at which Matlack used nitrogen for the purpose of unloading a tank truck and, further, that this was known by defendant. We find that defendant realized the necessity of a warning as to the danger of asphyxia, and that it sought to do this through small decals af-

---

[2] We note, in passing, that no issue of Brittingham's contributory negligence or assumption of the risk was raised by defendant in its post-trial brief. In any event, our review of the record discloses no evidence to support either defense.

fixed to the nitrogen cylinders. However, we find that the printed warning was ineffective, in that it was not read by any of the Matlack employes. Accordingly, we conclude that the evidence does not support a finding that defendant reasonably could have assumed that a meaningful warning to Matlack would have been superfluous.

## 2. *Union Carbide's Knowledge of the Possibility of Someone Entering the Tank*

Defendant's contentions that defendant's employes had no reason to believe someone could enter the tank is based largely on testimony that defendant's tank trucks do not permit such entry. However, defendant's employe, Hollingsworth, admitted that he was on the top of the tank and saw the manhole cover, although he stated he wasn't sure, at the time, what it was. On this point, O'Brien, Matlack's employe, stated that "it was obvious that there was [a manhole]," and that he was sure Hollingsworth had seen it. Our examination of exhibits P-1 and P-2 leads us to accept O'Brien's testimony over Hollingsworth's. As such, we find that defendant was on sufficient notice of the possibility of human entry into the tank to require some further action.

With regard to both factual questions discussed above, we feel compelled to note an additional finding. In our opinion, proper preparation for a joint experiment of this type should have included a discussion between experts from both companies to determine what dangers might exist. If one person had the knowledge and experience of both O'Brien *and* Hollingsworth, we are confident such a "person" would have seen that proper precautions were taken. The fact that no attempt was made to pool the knowledge and experience of these two men we deem to be the fault of both companies.

Both parties rely on the case of Beebe v. Highland Tank and Manufacturing Co., 373 F.2d 886 (3d Cir.), cert. den., 388 U.S. 911 (1967). Beebe involved verdicts, affirmed on appeal, against both decedent's employer, the owner of an underground storage tank, and the supplier of the molasses which was stored in the tank. The death resulted from asphyxiation due to inhalation of carbon dioxide gas which had been given off by the molasses.

Defendant relies on Beebe for the proposition that a supplier was under no duty to warn if the user "appreciated the nature and extent of the danger": 373 F.2d at 889. In our opinion, Beebe did no more than reiterate the point which was already established by Pritchard v. Liggett & Myers Tobacco Co., supra. Without repeating our earlier discussion, suffice it to say that the evidence presented did not establish that Matlack appreciated the nature and extent of the danger.

From plaintiff's point of view, we think Beebe is significant in that it establishes that the failure to warn or take adequate precautions may involve the negligence of *both* the supplier and the user.

Defendant cites three additional cases where plaintiffs proceeded unsuccessfully under a theory that defendants breached a duty to warn. As the discussion indicates, each case is meaningfully distinguishable from the present one.

In Engle v. Reider, 366 Pa. 411 (1951), the denial of plaintiff's motion for new trial following a jury verdict for defendant was affirmed. Reliance is placed on the following portion of the charge to the jury, approved by the Supreme Court:

"If you find that he did warn the contractor Routman; or, if you find that Routman did not need to be warned because of his superior knowledge of the

danger of unvented flues, [there was no duty to warn Routman's employees]": 366 Pa., at page 415.

The evidence showed that defendant (owner of the premises) had specifically warned Routman of the danger of asphyxiation, *and* that Routman did have *superior* knowledge of the danger. In the present case, defendant did not warn Matlack or any of its employes, and any knowledge of the danger imputable to Matlack was certainly not superior to that of Union Carbide.

In Croteau v. Borden Company, 277 F. Supp. 945 (E.D. Pa., 1968), a directed verdict was granted for defendant, the supplier of a chemical, sodium azide. Plaintiff, a laboratory technician, working under the close supervision of a professional chemist, was using this chemical to manufacture an explosive. It was clear from the evidence that plaintiff and his superiors knew *more* about the dangers than did the supplier, and that any warning by the supplier would have been *clearly* superfluous.

Similarly, in Hopkins v. DuPont, 212 F.2d 623 (3d Cir., 1954), the evidence showed that the users (blasting contractors) were at least as familiar (and perhaps more so) with the dangers than were the suppliers (dynamite manufacturers).

We agree with defendant that the supplier is not under a duty to warn each employe of the user (Valles v. Peoples-Pittsburgh Trust Co., 339 Pa. 33 (1940)), *if* he fulfills his duty "to warn the [user] of the existence of dangerous conditions": Engle v. Reider, supra, 366 Pa., at page 417. Thus, defendant's reliance on Valles and Engle is misplaced, since at no time did any of its employes warn *anyone* from Matlack.

Accordingly, we find that plaintiff has proved its case by a fair preponderance of the evidence, and that

defendant is liable for the dangers proximately caused by its negligence.

## DAMAGES

There being no claim for damages for pain and suffering, plaintiff is entitled to recover funeral expenses plus Brittingham's total estimated earnings diminished by the estimated expenses he would have incurred for his own maintenance, reduced to present value on the basis of six percent simple interest. The evidence showed that the funeral expenses were $1,450.50 and that at the time of death, Brittingham was earning about $7,500 per year. There was testimony that Brittingham aspired to be an over-the-road truck driver and that he could have eventually earned from $15,000 to $20,000 per year. For purposes of computing damages, we have chosen the annual amount of $11,500, taking into account the allowance for Brittingham's own maintenance and the fact that peak earnings would be reached through gradual escalation. Brittingham died at the age of 32. His life expectancy was shown to have been 70 years; however, we will take his working life expectancy to be 65. Accordingly, we insert 33 years at $11,500 per year into present value table and arrive at the amount of $205,515.79. This amount, together with funeral expenses of $1,450.50, yields a total verdict of $206,966.29.

Plaintiff has also alleged that she is entitled to punitive damages as the result of the wrongful death sustained by her decedent. The court, however, finds no gross or outrageous conduct on the part of defendant in this most unfortunate case causing the death of this young workman; for this reason, no punitive damages will be allowed.

## SUPPLEMENTAL OPINION

ALEXANDER and GUERIN, JJ., November 14,

1971.—This action was instituted by the administratrix of the estate of Ronald J. Brittingham to recover damages from defendant, Union Carbide Corporation, by reason of the death of Mr. Brittingham on November 30, 1967. The matter was tried by the court, sitting without jury, from June 5, to June 11, 1970.

The court adjudicated this matter in a memorandum opinion dated December 16, 1970, finding in favor of plaintiff and against defendant in the sum of $206,966.29.

Thereafter, defendant filed exceptions to the said adjudication which were argued before a two judge court, Alexander, and Guerin, JJ. The said exceptions were then dismissed and defendant appealed to the Superior Court of Pennsylvania.

Plaintiff relies on three theories of liability:

1. The negligence of defendant as a joint tortfeasor;

2. The negligence of defendant in failing to give adequate warning after assuming the obligation to do so; and

3. The negligent failure of defendant, as a seller of a dangerous product to warn of the inherent dangers of such a product.

Defendant contends that if decedent's employer knew that tank no. 1 in which decedent met death by instant suffocation contained pure nitrogen and that nitrogen would not support life, then the award must be vacated and cannot be sustained by the explanation that, as to this danger, decedent's employer "didn't think of it." Defendant accurately points out that these were not the precise words stated by Matlack's employes, O'Brien and Huttlin. The quotation marks around the words "didn't think of it" were added by inadvertence but although these were not the precise words, they do represent a fair inference from the testimony of Matlack's employes, O'Brien and Huttlin.

Huttlin precisely testified "If I thought about it, I would have known." "I really didn't think there was any problem." and, "Well, I mean, I just didn't think there was any danger," and O'Brien testified "I wasn't fully aware of the hazards."

Evidence that Matlack's employes knew that pure nitrogen would not sustain life does not alone establish whether or not the concentration of nitrogen would remain stable after the manhole was opened, the length of time required before it would be safe to enter the tank or that Matlack's employes understood these and other characteristics and properties of nitrogen applicable under these circumstances. There is no evidence that Matlack's employes understood such characteristics or appreciated the resulting hazards.

The same reasoning applies to evidence that Matlack's employes realized that oxygen is required for life. Therefore, we conclude that this evidence would not permit defendant to assume that Matlack's employes, including decedent, appreciated or realized the dangers presented under the circumstances which surrounded the death of plaintiff's decedent in the manner previously referred to.

This was a joint experiment to determine the feasibility of using cryogenic nitrogen to expel a special liquid chemical (TDI) from Matlack's tank trucks. Representatives of both defendant and Matlack had conferred prior to the experiment and both were required to be present, equipment and devices of both defendant and Matlack were used in the experiment, the nitrogen was supplied by defendant and the experiments conducted at Matlack's facility in West Chester, Pa. Matlack had no prior experience with the use of nitrogen for this purpose, but defendant, the supplier and prospective seller, was fully familiar with nitrogen. As such, defendant is held to the standard of an expert:

Guffie v. Erie Strayer Co., 350 F.2d 378 (3d Cir., 1965). As experts, defendant's employes are deemed to fully understand the properties and characteristics of nitrogen but there was no evidence that Matlack's employes had such knowledge except for the general realization that pure nitrogen would not sustain life.

As stated in our memorandum opinion, counsel agree that the applicable Pennsylvania law, enunciated in Pritchard v. Liggett & Myers Tobacco Co., 295 F.2d 292, 299 (1961), and reiterated in Beebe v. Highland Tank and Manufacturing Co., 373 F.2d 886 (3d Cir.), cert. den., 388 U. S. 911 (1967), established that a supplier is under no duty to warn if the user appreciates the nature and extent of the danger of the product or substance supplied.

In addition, one who supplies a dangerous product for the supplier's business purposes is not relieved of a duty to warn because the dangerous character of the product is discoverable: Restatement of the Law, Torts 2d, sec. 393. As previously discussed, Union Carbide, the supplier and prospective seller, was interested in obtaining Matlack's account to furnish nitrogen if it proved effective for the required purpose as a result of the experiment made, resulting in decedent's death. The reference to a supplier's business purposes applies not only where possession of the product is given to the other or to a third party but also where, as here, others are permitted to use or share in the use of the product while it remains in the supplier's possession: Restatement of the Law, Torts 2d, sec. 392 (b).

We also find it significant that, unlike either the Pritchard or Beebe case, this case involves joint tortfeasors and an attempted but inadequate warning as discussed below.

We cannot agree with defendant that Matlack's

knowledge that nitrogen will not support life provides the requisite appreciation of the danger and accordingly, the court confirms its conclusion that the evidence presented did not establish that Matlack knew or appreciated the nature and extent of the hazards involved.

This conclusion equally applies to decedent himself.

Likewise, we cannot agree that decedent's education, experience or background established that decedent realized the danger involved so as to support the defense of assumption of risk or contributory negligence.

As stated in our memorandum opinion, defendant also recognized the necessity and duty to warn of the danger of asphyxia by affixing a small decal to the nitrogen cylinder. Having undertaken the duty to warn, defendant then had a duty to provide a reasonably adequate warning: Leary v. Lawrence Sales Corp., 442 Pa. 389 (1971); Maize v. Atlantic Refining Co., 352 Pa. 51 (1945); Restatement of the Law, Torts 2d, sec. 324A. It was proven that the lettering on the small decal was only slightly more than one-eighth of an inch in height.

In determining the precautions which must be taken to satisfy the requirements of reasonable care, the magnitude of the risk involved must be compared with the burden which would be imposed by requiring them. Where the danger involved in use of the product without knowledge of its true characteristics is great and the means of disclosure are practicable and not unduly burdensome, the supplier should be required to adopt them: Restatement of the Law, Torts 2d, sec. 388 (c), comment (o). Here, the product was being used in defendant's presence and under the joint control of defendant and Matlack so that the burden on defendant of giving reasonable warning was so slight that it could have easily given a personal warning to those in the vicinity who might be in contact with the

product. Decedent was present, was seen on one of the tanks and was participating in the test. Viewed in the light of the peril warned against, we find that the attempted notice was clearly insufficient. There was no evidence that the warning was observed by any of Matlack's employes.

Defendant further contends that this is not really a case of failure to warn and argues that since its employes had no reason to believe that anyone would, or could, enter the tank, defendant was under no duty to warn.

A ladder on the side of the truck providing access to the 20-inch manhole on top of the tank was plainly visible and, in fact, defendant's employe, Hollingsworth, was on it. The manhole itself was obvious to one standing on top of the truck and the open lid was visible from the ground. Defendant also used similar tank trailers in its extensive chemical operations.

Although defendant knew that Matlack had no previous experience in the use of nitrogen for the purpose involved in this experiment, defendant did not give any oral warning to any Matlack employes not to enter the tank or of the inherent danger involved until after the accident occurred.

Accordingly, we restate our previous finding that defendant was placed on notice of the fact that a person could enter the tank.

In accordance with the court's memorandum opinion and the foregoing discussion, we cannot agree with defendant that this was not a joint experiment. Although there was consultation prior to the experiment between representatives of defendant and Matlack, the evidence establishes without any doubt, in the minds of the court, that the dangers involved in this joint effort were not fully discussed. Accordingly, defendant and Matlack were joint tortfeasors who must both

share the responsibility for failing to take proper and reasonable precautions to avoid or provide sufficient warnings of the peril that caused decedent's untimely death.

Defendant contends that the court erred in awarding damages based on loss of future earnings from employment to which the decedent merely aspired.

At the time of his death, decedent was 32 years old, survived by a 31-year-old widow and four children, aged three months to 11 years of age. He was a Navy Veteran of the Korean War, had completed high school, was active in sports and in excellent health. He was saving to send his children to college and spending only approximately $5 per week from his earnings for himself.

He was a devoted father and husband. His supervisors and fellow employes regarded him as a conscientious, cooperative, competent and ambitious worker.

He was employed as a utility man but classified by the union as a second class painter. He had been employed by Matlack for nine months at a yearly wage of approximately $7,500 per year. He aspired to be an over-the-road truck driver, was qualified for that position and his union representative was working to have him placed in that position with Matlack at the time of his death. There were openings for over-the-road truck drivers in other companies.

At the time of his death, over-the-road truck drivers earned between $15,000 and $20,000 per year.

Taking into account decedent's own maintenance and the fact that his earnings would gradually increase, the court computed annual earnings at $11,500 for 33 years, the balance of decedent's working life expectancy to arrive at the amount of $205,515.79 reduced to present worth. Decedent's funeral expenses of $1,450 resulted in the total verdict of $206,966.29.

There was no claim for damages for pain and suffering and no amount was allowed for punitive damages.

Of necessity, we must reduce to the certainty of a verdict uncertain future contingencies based on the best evidence available to determine the pecuniary value of the human life involved. This calculation cannot be left to mere conjecture, but, however difficult to prove, must still rest on satisfactory proof. In accordance with this standard, we confirm our previous finding that the evidence presented is sufficient to sustain the verdict: Hall v. George, Appellant, 403 Pa. 563 (1961); DeSimone v. Philadelphia, Appellant, 380 Pa. 137 (1955).

Therefore, the court dismisses defendant's exceptions to its adjudication and directs that a final judgment be entered upon the verdict in favor of plaintiff.